UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

JARO TRANSPORTATION SERVICES, INC.,  )
et al.,  )        Case No. 4:03-CV-01227
  )
      Plaintiffs,  )        Judge Ann Aldrich
  )
      v.  )        Magistrate Judge Kenneth S. McHargh
  )
LEONARD GRANDY, et al.,  )
  )        <u>MEMORANDUM AND ORDER</u>
      Defendants.  )
  )

This is an action for common law trademark infringement and false designation of origin under the Trademark Act of 1946, as amended (The Lanham Act, 15 U.S.C. § 1051 *et seq.*), and related causes of action under the common law and under the laws of the State of Ohio under 28 U.S.C. § 1338(b). The suit was filed by Jaro Transportation Services, Inc. ("Jaro") and Dalko Logistics Group, LLC ("Dalko Logistics"), Ohio companies (if referred to collectively, hereinafter "Jaro"). The named defendants in the action are Dalko Resources, Inc. ("Dalko Resources"), a Pennsylvania corporation, Leonard Grandy, Richard Grandy, Melissa Sager, Deana Grandy, all Pennsylvania residents, and a nominal defendant, LMR Transportation Services, Inc., incorporated under the laws of Pennsylvania (if referred to collectively, hereinafter "Grandy"). Grandy brought a third party complaint against James Stiffy, Sr. (Stiffy), an officer and shareholder of Jaro and a sole member of Dalko Logistics, and filed a counterclaim against Jaro. (Doc. No. 31.) Now before this court are cross-motions for partial summary judgment under Federal Rule of Civil Procedure 56(c) filed by Jaro (Doc. No. 90) and by Grandy (Doc. 91). For the following reasons, the court partially denies and partially grants Jaro's and Grandy's motions for summary judgment.

## I.    Background

The pleadings of the parties abound in contradictory statements and factual allegations.  The most pertinent facts can be summarized as follows.

Jaro is a hauling and trucking company with clients in the manufacturing, steel, and aluminum industry.  Prior to the developments pertinent to this action, Leonard Grandy was employed by an Illinois company called ABC-NACO and was in charge of the company's track and rail business.  ABC-NACO was a manufacturer of railroad parts, supplies, and materials.  The company was renamed Meridian Rail after it emerged from bankruptcy proceedings in January 2002.

In March 2001, Jaro hired Richard Grandy, Leonard Grandy's son, as a dispatcher.  In April 2001, officers of Jaro met with Leonard Grandy in Chicago to discuss the transportation services that Jaro had just started to provide to ABC-NACO.  During the conversation, Leonard Grandy expressed an interest in forming and running a freight management and logistics business.  Grandy alleges that Stiffy and Leonard Grandy subsequently entered into an agreement to form a logistics company with each of them having an equal ownership interest in the business.  Under the terms of the alleged agreement, Leonard Grandy agreed to provide his experience and business contacts for the new logistics company, while Stiffy agreed to provide the capital, equipment, and other support necessary to finance and run the business.  Grandy alleges that the name "Dalko" was originated by Leonard Grandy and is an acronym derived from the middle initials of his three children, his wife, and himself.  Jaro alleges that what Stiffy and Leonard Grandy consented to was an agreement to agree to form a logistics company with each having an equal ownership interest provided that Leonard Grandy obtain for such company the logistics contracts for all of ABC-NACO divisions and further obtain logistics contracts with a number of other companies with whom Grandy was a personal friend.

-2-

In July 2001, Jaro hired Melissa Sager, Leonard Grandy's daughter, for employment.  On or about October 15, 2001, Stiffy formed a limited liability company under the name Dalko Logistics, which began business as a provider of logistical and coordination services for the trucking and hauling industry.  Such services include providing a customer with a shipping price list for the cost of shipping from the customer's facility to various locations throughout the country, and coordinating and contracting with various transportation companies to meet the customer's transportation needs.

Shortly after ABC-NACO filed its bankruptcy petition in October 2001, Leonard Grandy informed Jaro of his resignation from ABC-NACO.  Jaro alleges that Leonard Grandy promised that if they hired him, he would a) obtain for Dalko Logistics the logistic contract from ABC-NACO for all of their divisions and the successors of those divisions; b) obtain for Dalko Logistics the logistic contacts with a number of other companies requiring transportation services with whom Leonard Grandy was a personal friend; c) obtain for Dalko Logistics logistic contracts for shipments of freight in and out of Laredo, Texas; d) work for Jaro as Vice-President of Sales; and e) develop Jaro's sales in the Great Lakes region by 1) calling on Jaro's new and existing customers, 2) obtaining shipping business for Jaro, and 3) obtaining for Dalko Logistics the logistics business for those companies whose shipping business was obtained by Jaro.  Grandy denies part of these allegations and instead admits that Leonard Grandy indicated his belief that he could obtain for Dalko Logistics certain logistics business from ABC-NACO, as well as certain logistics business from other companies with whom Leonard Grandy had a personal and/or professional relationship.

Jaro alleges that on or about November 9, 2001, and through March 2002, Leonard Grandy was employed by Jaro as a salaried employee for the purpose of fulfilling his promises.  Thereafter and through November 1, 2002, alleges Jaro, Leonard Grandy was employed by Dalko Logistics.  Jaro

-3-

further alleges that during his employment by Jaro, Leonard Grandy executed contracts as CEO of Dalko Logistics, held himself out as CEO of Dalko Logistics and Vice President of Sales for Jaro, and received a salary of $80,000.00 annually, an automobile, an expense account, and medical benefits from Jaro. Grandy alleges that Leonard Grandy was never an employee of Jaro; however, Grandy concedes that Leonard Grandy executed contracts as CEO of Dalko Logistics, held himself out as CEO of Dalko Logistics, and received certain compensation for his Dalko Logistics work from funds drawn on Jaco's accounts.

On or about March 18, 2002, Leonard Grandy, Richard Grandy, and Melissa Sager were allegedly transferred to the payroll of Dalko Logistics.

In or around May of 2002, Dalko Resources was formed as a corporation in Pennsylvania with Leonard Grandy as CEO, Richard Grandy as President, Melissa Sager as its Secretary, and Deana Grandy as its Treasurer. Dalko Resources was formed for the purpose of providing logistical and coordination services in the rail industry. Jaro was not aware of the formation of Dalko Resources. Dalko Resources commenced its operations sometime in December of 2002 or January of 2003.

Jaro alleges that Leonard Grandy did not live up to his promises made prior to his employment with Jaro; that during his employment by Jaro and thereafter, he has been actively involved in transferring the business of Jaro to Dalko Resources; that he has been diverting logistic services from Dalko Logistics and transportation services from Jaro to Dalko Resources; and that he has attempted to obtain logistic contracts in his own name and/or in the name of Dalko Resources when working for Dalko Logistics with an intent to subsequently divert them to Dalko Resources. Leonard Grandy resigned as CEO of Dalko Logistics on November 1, 2002. Jaro alleges that Leonard Grandy took proprietary business information with him when he left Dalko Logistics' employ, including but not limited to,

-4-

customer lists, draft contracts, business methodology, price and cost information, and accounting procedures.

Jaro also alleges that Richard Grandy and Melissa Sager were actively involved in transferring Jaro's business to Dalko Resources while employed by Jaro and thereafter.  Grandy admits that Richard Grandy and Melissa Sager placed certain telephone calls of a personal nature during business hours from Dalko Logistics to Dalko Resources and Leonard Grandy while in Dalko Logistics' employ.  Richard Grandy and Melissa Sager resigned from Dalko Logistics on March 14, 2003.

According to Grandy, Stiffy never invested the capital or made a good faith effort to support the success of Dalko Logistics.

On June 19, 2003, Jaro made a demand on Grandy to cease and desist from using the "Dalko" mark.  That same day, Jaro initiated this action.  On March 1, 2004, Jaro filed a second amended complaint alleging common law trademark infringement and false designation of origin under the Lanham Act, deceptive trade practices, misappropriation of trade secrets, unfair competition, tortious interference with business relationships and/or prospective business relationships, promissory estoppel, constructive trust, disclosure and accounting, copyright infringement, and spoliation of evidence. (Doc. No. 29.)  On March 8, 2004, Grandy filed an answer to plaintiffs' second amended complaint, a counterclaim, and a third-party complaint.  The counterclaim and third-party complaint allege common law trademark violation and false designation of origin in violation of the Lanham Act, breach of contract, fraud, negligent misrepresentation, unjust enrichment, accounting, and cancellation of copyright registration. (Doc. No. 31.) Jaro then filed a motion for partial summary judgment with respect to counts 1 and 10 of the second amended complaint: Common Law Trademark Infringement and/or False Designation of Origin under § 43(a) of the Lanham Act and Intentional and/or Negligent Spoliation of

-5-

Evidence, respectively. (Doc. No. 90.)  Grandy, too, filed a motion for partial summary judgment on all of the claims against Deana Grandy and Melissa Sager and on the following counts of the second amended complaint: Count 3 - Misappropriation of Trade Secrets; Count 5 - Tortious Interference with Business Relationships; Count 6 - Promissory Estoppel; Count 7 - Constructive Trust; Count 8 - Disclosure and Accounting; Count 9 - Copyright Infringement; and Count 10 - Intentional and/or Negligent Spoliation of Evidence. (Doc. No. 91.)  In addition, Grandy moved for summary judgment on Count 7 of the Counterclaim - Cancellation of Copyright Registration.

## II.     Discussion

Under Federal Rule of Civil Procedure 56[1], summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986); *Hedrick v. W. Reserve Care Sys*., 355 F.3d 444, 451 (6th Cir.2004).

If the movant succeeds, the burden then shifts to the nonmoving party to demonstrate the existence of a material dispute as provided in Rule 56(e):

> [a]n adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

---

[1] The standard for summary judgment under the Ohio Rules of Civil Procedure is essentially identical to the federal standard and, for that reason, will not be repeated in the discussion of the state claims addressed below.

Fed. R. Civ. P. 56(e); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986).  Parties

opposing summary judgment must go beyond the pleadings and produce some type of evidentiary

material in support of their position.  *See Celotex,* 477 U.S. at 324.

In determining whether a genuine issue of material fact exists, this court must view the evidence

in a light most favorable to the nonmoving party.  *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157

(1970); *Hamby v. Neel*, 368 F.3d 549, 556 (6th Cir. 2004); *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710

(6th Cir. 2000).  A fact is "material" only if its resolution will affect the outcome of the lawsuit.

*Anderson,* 477 U.S. at 248.  Determination of whether an issue is "genuine" requires consideration of the

applicable evidentiary standards.  Thus, in most civil cases, the court must decide whether the evidence

is such that "reasonable jurors could find by a preponderance of the evidence that the [nonmoving party]

is entitled to a verdict" or whether the evidence is "so one-sided that [the moving party] must prevail as

a matter of law."  *Id.* at 252.

### A.      Jaro's Motion for Partial Summary Judgment

#### 1.      *Violation of the Lanham Act*

The court grants Jaro's motion for summary judgment on the issue of the prior use of the

trademark.  The court, however, reserves for the trial the determination of the geographic extent of Jaro's

trademark rights and the scope of the injunction.

Jaro alleges that by adopting the name Dalko Resources and by exploiting it in the transportation

logistics business, Grandy is infringing its common law trademark rights and has made a false

designation of origin, a false or misleading description and/or false or misleading representation of fact,

and a deception as to the affiliation, connection or association of their business entity with that of Jaro

in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  Jaro claims that Dalko Logistics

has been the first to appropriate and use the Dalko mark in the market and therefore it possesses superior and exclusive rights to the mark, entitling it to enjoin Grandy from using the same.

Grandy does not dispute the fact that Dalko Logistics was formed in October, 2001, well before Dalko Resources started its operations, and that Dalko Logistics conducted logistics business under that name since its formation. Rather, Grandy claims that Dalko Resources was the first to penetrate the relevant market by virtue of its advertising, promotion, and marketing efforts, thus giving Grandy, not Jaro, superior rights to the Dalko mark. Grandy further argues that, at a minimum, summary judgment for Jaro is inappropriate because the resolution of Grandy's counterclaims for breach of contract, fraud, negligent misrepresentation, and unjust enrichment may be dispositive of Jaro's claim under the Lanham Act; that is, if the court finds that Leonard Grandy was entitled to equal ownership in Dalko Logistics, then he would have as much ownership in the Dalko mark as Stiffy.

Neither Dalko Logistics nor Dalko Resources are registered trademarks. Section 43(a) of the Lanham Act has been held to extend its protection to unregistered trademarks. *See Two Pesos Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 767 (1992) (holding that the general principles qualifying a mark for registration under § 2 of the Lanham Act are applicable in determining whether an unregistered mark is entitled to protection under § 43(a)).

A trademark is a designation, any word, name, symbol, or device, or any combination thereof, which serves to identify and distinguish the goods of the mark's owner from those manufactured or sold by others, and to indicate the source of the goods, even if that source is unknown. 15 U.S.C. § 1127. Marks are often classified in an ascending order of distinctiveness: 1) generic; 2) descriptive; 3) suggestive; 4) arbitrary; or 5) fanciful. *Two Pesos*, 505 U.S. at 768 (citing *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir. 1976). The latter three categories of marks are deemed

-8-

inherently distinctive and are entitled to protection.  *Id.*  In contrast, marks that are merely descriptive of a product are not inherently distinctive and can gain protection only if they have acquired secondary meaning.  *Id.* at 769.  Generic marks are not eligible for registration as trademarks in any circumstances. *Id.* at 768.

The definitions of the classifications of marks are as follows.  A generic term is one that refers to the genus of which the particular product is a series. *Abercrombie*, 537 F.2d at 9.  A term is descriptive if it conveys an immediate idea of the ingredients, qualities or characteristics of the goods.  *Id.* at 11 (*citing General Shoe Corp. v. Rosen*, 111 F.2d 95, 98 (4th Cir. 1940)).  On the other hand, a term is suggestive if it requires imagination, thought, and perception to reach a conclusion as to the nature of the goods.  *Id.*  Finally, a fanciful term is one invented solely for use as a trademark, while a word used in an unfamiliar way is called an arbitrary term.  *Id.*

This court concludes that Dalko is a fanciful term, and, as an inherently distinctive mark, is entitled to trademark protection.  Dalko is not a generic term as it does not refer to the genus of logistics services.  It is not descriptive or suggestive because the term Dalko does not convey any immediate idea of the characteristics of the trademark's services, nor would any imagination, thought, or perception, allow one to conclude that Dalko is a mark for a logistics and coordination service.  Nor is it an arbitrary term, since Dalko is not a an existing word and hence cannot be a word used in an unfamiliar way.  It is instead a new term allegedly invented out of the first initials of the Grandy family for its use as a trademark.  The conclusion is thus that Dalko is a fanciful term entitling its owners to exclusive use of this trademark.

The Lanham Act provides a right of action to persons engaged in interstate commerce against deceptive and misleading use of common law trademarks in interstate commerce.  Section 1125(a) of the Lanham Act creates civil liability for:

> 1) Any person who, on or in connection with any goods or services, or any container of goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false of misleading representation of fact, which
>
>> A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

The Sixth Circuit has outlined the following requirements for making out a claim for infringement under 15 U.S.C. § 1125(a): 1) ownership of a specific service mark in connection with specific services; 2) continuous use of the service mark; 3) establishment of secondary meaning if the mark is descriptive; and 4) a likelihood of confusion amongst consumers due to the contemporaneous use of the parties' service marks in connection with the parties' respective services.  *Homeowners Group, Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d, 1100, 1105 (6th Cir. 1991).

The third and fourth elements do not bar a claim for infringement.  The third element is irrelevant to the instant case as we have already determined that Dalko is an inherently distinctive name and is thus not a descriptive term requiring a showing of secondary meaning to acquire trademark protection. *See Two Pesos*, 505 U.S. at 773 (holding that inherently distinctive marks do not require a proof of secondary meaning to be eligible for protection).  The fourth element is equally uncontested, as both parties unanimously agree that the use of the term Dalko by the two companies creates a significant likelihood of confusion and has indeed already resulted in numerous instances of consumer confusion when client

-10-

invoices intended for one company have been erroneously directed to the other.  *See also Frisch's Restaurants, Inc. v. Elby's Big Boy, Inc.*, 670 F.2d 642, 648 (6th Cir. 1982) (evidence of actual confusion is the best evidence of likelihood of confusion).  Consequently, to prevail on its claim of violation of the Lanham Act, Jaro must show ownership and continuous use of the Dalko mark in connection with its logistics services.

The Sixth Circuit holds that "ownership rights flow only from prior appropriation and actual use in the market."  *Homeowners*, 931 F.2d at 1105 (citing J. MCCARTHY, TRADEMARKS AND UNFAIR COMPETITION § 16:5, 733 (2d ed. 1984)).  Jaro claims that no genuine issue of material fact exists that Dalko Logistics has been the first to use the Dalko mark in February 2002 and has been using the mark continuously since then.  Specifically, Jaro's pleadings and the affidavits from Dalko Logistics' employees indicate that Dalko Logistics was formed in October 2001; that since about February 2002, Dalko Logistics has been consistently sending out facsimiles with a header message saying "Dalko Logistics," and mail on Dalko letterhead and in envelopes bearing the Dalko signs; that a Dalko Logistics tri-fold brochure had been printed out for distribution in the beginning of 2002; and that Dalko Logistics' employees, including Leonard Grandy as CEO of the company, have made oral representations about the Dalko Logistics services to customers starting in November 2001.  In 2002, Dalko Logistics claimed a total income of $1,477,235.12.

Grandy responds with an assertion that although Dalko Logistics did conduct "some" business before Dalko Resources began operations in January 2003, this alone would be insufficient to establish plaintiffs' ownership of the Dalko mark because it was Dalko Resources who penetrated the relevant market first by its advertising and marketing.  For this proposition, Grandy relies on *Allard Enters., Inc. v. Advanced Programming Res., Inc.*, 249 F.3d 564, 574 (6th Cir. 2001) ("*Allard II*"), in which the Sixth

-11-

Circuit has adopted a four-prong test to determine in which geographic locations one of the claimants'
market penetration was sufficient to warrant protection. The four factors applied in *Allard II* are: 1) the
volume of sales of the product in that area, 2) growth trends in the area, 3) the market penetration as a
function of the total product market, and 4) the amount in advertising. *Id.* Using the framework of this
test, Grandy argues that because its marketing and advertising campaign has been superior to that of
Dalko Logistics, Dalko Resources has penetrated the logistics market first and has succeeded in
associating the Dalko mark with the Grandy family.

Grandy's reliance on *Allard II* is misplaced. *Allard II* involved the rights of a prior senior user
vis-a-vis a junior user with a federal trademark registration. The case was on appeal from the District
Court following a remand from *Allard Enters., Inc. v. Advanced Programming Res., Inc.*, 146 F.3d 350
(6th Cir. 1998) (*Allard I*). *Allard I* involved a directive to the District Court to determine whether the
defendant, who claimed to have made a first use of the APR mark prior to the plaintiff's registration of
the trademark, had sufficiently penetrated the entire market of the state of Ohio to establish ownership
of the mark in that geographic location. The essential difference of *Allard II* from the instant case is
that, in the former, the issue was not who was the prior user of the contested mark, but how far
geographically the defendant's prior use had extended in the state. *Allard II*, 249 F.3d at 572
("[D]efendant APR used the mark in commerce first[.] ... The key question here, however, is the correct
geographic extent of that superior right."). Thus, the Circuit panel considered the aforementioned four-
part test only to determine the geographic scope of the use of the APR mark by the senior user. Indeed,
*Allard I* explicitly held that "[a]s long as there is a genuine use of the mark in commerce, ... ownership
may be established even if the first uses are not extensive and do not result in deep market penetration
or widespread recognition." *Allard I*, 146 F.3d at 358. Thus, Grandy's argument that Dalko Resources

-12-

has produced more advertising and more recognition among some of the industry customers is unavailing and cannot change the fundamental fact that Dalko Logistics had started to use the mark as early as the end of 2001 or beginning of 2002, well before Dalko Resources started business in January 2003.

The cases from other circuits relied upon by Grandy are similarly unhelpful. Cited by Grandy in support of its "market penetration" argument, *Natural Footwear Ltd. v. Hart, Schaffner & Marx*, 760 F.2d 1383 (3d Cir. 1985) also centered on the issue of the territorial extent of the rights of the senior and junior users of a registered trademark within the context of a District Court grant of a nationwide injunction. In *Natural,* prior actual use by plaintiff Roots in New Jersey had been established and the sole question was whether its national reputation was sufficient to warrant protection nationwide. *Id.* at 1397-98. That is, unlike the circumstances of the present case, the Fourth Circuit applied the four-part market penetration test in *Natural* to determine whether the plaintiff's reputation and sale activities had reached beyond New Jersey where his prior use was beyond question. Likewise, *Sweetarts v. Sunline, Inc.*, 380 F.2d 923 (8th Cir. 1967), cited by Grandy, involved the infringement of a valid common law trademark and the question again was the geographic extent of the trademark owner's protection. It is thus inapposite for comparison to the present case.

Dalko Logistics' prior actual use of the Dalko mark is apparent and is not even meaningfully contested by Grandy. Plaintiffs' company was registered under the name Dalko Logistics in 2001; Dalko Logistics communicated with its customers and prospective customers using Dalko stationary since 2002; and the company earned an income over $1 million almost a year prior to Dalko Resources starting its operations. *Cf. Allard I*, 146 F.3d at 359 (prior use established when the defendant used the contested trademark "on at least one fax, at least one resume, and in numerous other solicitations.").

-13-

There is no support in any of the cases cited by Grandy for the substitution of the finding of actual prior use with Grandy's proposed inordinate reliance on the volume of advertising by a later user for purposes of determining trademark ownership.  Indeed, if Grandy's argument were accurate, a subsequent well-financed user could simply adopt a less prosperous prior user's trademark, and by investing heavily in marketing and promotion, strip the latter of his lawfully obtained common law trademark rights. *Contra.*, *Sweetarts*, 380 F.2d at 928 (a prior user's rights cannot be overpowered by a later user's "comparatively massive size and generous promotional expenditures.").  Because Dalko Logistics' prior use and ownership of the Dalko trademark are thus established, Grandy's promotional endeavors or its clients' association of the name Dalko with the Grandys are not relevant to the disposition of the claim.

Grandy's other argument is that because it has unresolved counterclaims for breach of contract, fraud, negligent misrepresentation, and unjust enrichment that bear upon Leonard Grandy's ownership of Dalko Logistics, summary judgment in favor of Jaro would be improper.  Again, the court disagrees with this reasoning.  It is common knowledge that ownership of a company asset, be it a share or other ownership interest, belongs to the legal entity itself and not to its shareholders.  *Dole Food v. Patrickson*, 538 U.S. 468, 474-75 (2003) ("A basic tenet of American corporate law is that the corporation and its shareholders are distinct entities. ... An individual shareholder, by virtue of his ownership of shares, does not own the corporation's assets.") (citations omitted).  Even if it is determined that Leonard Grandy was entitled to an equal share in Dalko Logistics, it would not afford him the right to use Dalko Logistics' trademark to name his new company.  Moreover, it would most certainly not absolve Dalko Resources, a separate entity, from liability for the infringement of the trademark rights of Dalko Logistics.

-14-

Thus, the court finds that no genuine issue of material fact exists as to whether Dalko Logistics is the owner of Dalko trademark, as it was the first to appropriate and continuously use it.  The court grants Jaro's motion for summary judgment on the issue of the prior use of the trademark.  The court, however, reserves for the trial the determination of the geographic extent of Jaro's trademark rights and the scope of the injunction.  The *Allard II* factors will then be instrumental to this inquiry.

### 2.     *Spoliation of Evidence*

Jaro's motion for summary judgment on the claim of spoliation of evidence is denied.

Jaro claims that Grandy spoliated evidence by wiping clean Deana Grandy's computer, which stored all of the Grandys' files pertaining to their work for Dalko Logistics. Thus, Jaro alleges that on December 14, 2003, after the present lawsuit was filed and discovery began, Grandy hired a computer service man, Stephen Summers, to install a new operating system on the computer.  Jaro points to Summers's deposition in which he states that prior to installing the new system, he warned Leonard and Deana Grandy that after he made the installation, all data on the computer's hard drive would be lost. According to Summers, Deana Grandy told him not to worry about it and that consequently Summers completed the installation without performing any back-up of the data.  Summers is not aware of any back up made to the computer.

Jaro asserts that Deana Grandy's computer is of high importance to its case.  Leonard Grandy admitted that Deana's computer was the only computer on which all the work performed by the Grandys in relation to Dalko Logistics was stored.  Jaro claims that since Grandy admitted that they used Jaro's computer for personal emails to Deana's computer and that Richard Grandy and Melissa Sager handled some of the Dalko Resources business while in the employ of Dalko Logistics, evidence of the

-15-

documents and the communication the Grandys exchanged with the customers and potential clients of Dalko Logistics regarding business for Dalko Resources is critical to Jaro's case.

In response to Jaro's motion for summary judgment, Grandy submitted an affidavit by Deana Grandy where she states that she "specifically asked Mr. Summers to make sure that [her] files on the computer were backed up and preserved and he did so." (D. Grandy Aff. at ¶ 5.)  She then claims that all of the files that were on her computer before the maintenance work was done were ultimately on the computer that was produced to Jaro for discovery.  (*Id.* at ¶ 8.)  As evidence of the fact that all of the files had been backed up, Deana points out that a file folder called "DALKO Logistics," containing eighteen files, has been available and was produced from her computer during discovery.  The "properties" of each of those files demonstrate that they were created on December 14, 2003, but the modification dates of the files go back to 2001, i.e. the computer identified the date of the creation of the file as the date of the system reinstallation on December 14, 2003, whereas the dates of the modification indicate that the files have been in use as early as 2001.

Jaro responds with an affidavit of its computer expert Chris Hallgren who stated:

> "[T]he backup process is selective and there is no way to know which files were backed up, which files were changed after they were backed up or which files were not backed up.  There is no record of the original file system so there is no way to know if all relevant files were included in the backup.  In addition, some backup software may retain the creation date and my examination of Deana's computer did not show any Word documents, Excel documents or email files with creation dates earlier than December 14, 2003 except for files that are either operating system files or Microsoft Office templates delivered with the application."

(Hallgen Aff. at ¶ 7.)  Additionally, Jaro claims that at the time of the deposition of two of the witnesses, Grandy produced a contract and a handbook relating to Dalko Logistics; however, there was no trace of those documents on the computer when it was made available to Jaro.  Neither could the

-16-

Dalko tri-fold brochure, which Grandy claims was created by Deana Grandy and for which it claims a copyright, can be found. Similarly, Jaro found emails and documents on their own computers that were sent to and/or from Deana Grandy's computer; yet, they are not included in the listing of the files in the Dalko folder recovered from the computer. Because of these shortcomings in evidence, Jaro claims it has been denied the ability to gather all material and relevant evidence pertinent to its case.

The rules that apply to spoliation of evidence are defined by state law. *Beck v. Heik*, 377 F.3d 624, 641 (6th Cir. 2004). Ohio only recognizes the tort of intentional spoliation of evidence. *Smith v. Howard Johnson Co.*, 615 N.E.2d 1037, 1038 (Ohio 1993). In *Smith*, the Supreme Court of Ohio established the following elements for a claim of intentional spoliation of evidence: 1) pending or probable litigation involving the plaintiff; 2) knowledge by the defendant that litigation exists or is probable; 3) willful destruction of evidence by defendant designed to disrupt the plaintiff's case; 4) disruption of the plaintiff's case; and 5) damages proximately caused by the defendant's acts. *Id.*

Elements 1 and 2 are indisputable, as the action was filed on June 19, 2003, and Grandy had full knowledge of it, as evidenced by numerous entries in the case docket prior to December 14, 2003. Element 3, however, is a more complex matter. The critical issues are whether there has been any destruction of evidence, and, if the question is answered in the affirmative, whether the destruction was willful on Grandy's part.

The parties marshal conflicting evidence to support their respective positions as to the alleged destruction of evidence. While Deana Grandy claims in her affidavit that Summers backed up all data on her computer upon her request and that all Dalko-related files were made available to Jaro during discovery, Summers, in his affidavit, stated that he had been told by Deana to go ahead with the installation without backing up the files and that he did precisely so. Deana's position is further

-17-

undermined by Hallgreen's affidavit who explained that due to intricacies of the software installation process, reinstallation without backing up the files might have  preserved some files but would have lost others and that it would be impossible to tell which files were backed up, which files were modified, and which files were lost after the installation.  Judging by the specific examples of missing files that should have been on the computer unless they had been destroyed, such as the tri-fold brochure, the handbook, the contract, emails, and documents that had been sent from Dalko Logistics' computers to Deana's computer, it may be a fair inference that the missing data has been destroyed.  Even if we made that leap, however, the element of willfulness remains to be shown.

"In a spoliation case, 'wilful' reflects an intentional and wrongful commission of the act." *White v. Ford Motor Co.*, 755 N.E.2d 954, 957 (Ohio Ct. App. 2001), *citing Drawl v. Cornicelli*, 706 N.E.2d 849, 852 (Ohio Ct. App. 1997).  The intent of an alleged spoliator can be inferred from the surrounding circumstances.  *Cincinnati Ins. Co. v. Gen. Motors Corp.*, No. 94OT017, 1994 Ohio App. LEXIS 4960, at *9 (Ohio Ct. App. 1994).  The fact that the loss of the data occurred while the lawsuit was in full swing and discovery was underway may give rise to suspicion and inferences of foul play.  However, the question of intent is ultimately a matter of weighing all the relevant evidence and the credibility of witnesses.  This is a task within the province of the jury and the court will not usurp that role.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("[c]redibility determinations, the weighing of evidence and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.").  Summary judgment under these circumstances, therefore, is inappropriate.

Similarly, the disruption of Jaro's case and the damages to it as a result of Grandy's act, raise a genuine issue of material fact and should be left to the jury.  "The test for prejudice is whether there is a reasonable possibility, based on concrete evidence, that access to the evidence which was destroyed

or altered, and which was not otherwise obtainable, would produce evidence favorable to the objecting party."  *Loukinas v. Roto-Rooter Servs.*, No. C-050354, 2006 Ohio LEXIS 3081, at * 12-13 (Ohio Ct. App. 2006), *citing Nationwide Mut. Fire Ins. Co. v. Ford Motor Co.*, 174 F.3d 801, 804 (6th Cir. 1999). Jaro makes claims of deceptive trade practices, misappropriation of trade secrets, unfair competition, tortious interference with business relationships and/or prospective  business relationships, and promissory estoppel, among others, which will necessitate evidence of certain communication and actions on Grandy's part. However, absent any concrete evidence of prejudice to Jaro's case, and construing the existing evidence in a light most favorable to Grandy, the court is not prepared to find that Jaro's case has been disrupted and that damages have been incurred.  Jaro's motion for summary judgment on the claim of spoliation of evidence is denied.

> **B.**    **Grandy's Motion**
>
> > *1.     Misappropriation of Trade Secrets*

Grandy's motion for summary judgment on Jaro's claim of misappropriation of trade secrets is granted and the claim is dismissed.

Jaro claims that its customer lists, draft contracts, methods of doing business, price and cost information, and accounting procedures, constitute trade secrets as defined by Ohio Revised Code § 1333.61(D) and that Grandy has misappropriated its trade secrets in violation of Ohio Revised Code §§ 1333.62 and 1333.63.  In its motion for summary judgment, Grandy argues that the information claimed by Jaro to be a trade secret does not qualify as such, and, explicitly denying having ever received confidential information, further argues that no misappropriation of evidence can thus be shown by Jaro.

Section § 1333.61(D) defines a trade secret as:

> Information, including the whole or any portion or phase of any scientific
> or technical information, design, process, procedure, formula, pattern,

-19-

compilation, program, device, method, technique, or improvement, or any business information or plans, financial information, or listing of names, addresses, or telephone numbers, that satisfies both of the following:

> 1) It derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

> 2) It is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

OHIO REV. CODE ANN. § 1333.61(D) (2006). Under Section 1333.61(B), misappropriation is:

> 1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means;

> 2) Disclosure or use of a trade secret of another without the express or implied consent of the other person by a person who did any of the following:

>> a) Used improper means to acquire knowledge of the trade secret;

>> b) At the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret that the person acquired was derived from or through a person who had utilized improper means to acquire it, was acquired under the circumstances giving rise to a duty to maintain its secrecy or limit its use, or was derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use;

>> c) Before a material change of their position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

"Improper means" includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means. § 1333.61(A).  Thus, to survive a motion for summary judgment, Jaro must demonstrate, by depositions, answers to interrogatories, and

-20-

admissions on file, together with the affidavits: (a) that its customer lists, draft contracts, methods of doing business, price and cost information, and accounting procedures are trade secrets; and (b) that they have been misappropriated.

In analyzing a claim of a trade secret, the Supreme Court of Ohio has adopted the following factors: 1) the extent to which the information is known outside the business; 2) the extent to which it is known to those inside the business, i.e., by the employees; 3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; 4) the savings effected and the value to the holder in having the information as against competitors; 5) the amount of effort or money expended in obtaining and developing the information; and, 6) the amount of time and expense it would take for others to acquire and duplicate the information. *Ohio ex rel. Besser v. Ohio State Univ.*,732 N.E.2d 373, 378 (Ohio 200) (internal quotation marks and citations omitted).  A claimant asserting the existence of a trade secret has the burden to identify and demonstrate that the material meets the statutory definition. *Fred Siegel Co. v. Arter & Hadden*, 707 N.E.2d 853, 862 (Ohio 1999).

Jaro contends that its customer lists and other information listed above fall under the category of "any business information or plans, financial information, or listing of names, addresses, or telephone numbers" in the Section 1333.61(D) definition.  It goes on to assert that this information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by, proper means by other persons who can obtain economic value from its disclosure or use.  Jaro, however, does not offer any evidence whatsoever to corroborate its assertion that its customer lists, vendor lists, sales reports, pricing and cost information, sale summaries, and rate information are not generally known to the public and are not readily ascertainable by proper means.  Absent from Jaro's brief is almost any discussion of the

aforementioned factors.  The closest that it comes to supporting its claim is to state that "Dalko Logistics' proprietary information would be invaluable to the Grandys when setting up a competing business such as Dalko Resources."  This, however, does not in itself mean that the information possesses independent economic value, nor that it is not generally known to the public or readily ascertainable.  Surely, there are many types of information that are generally known to the public that would still be invaluable to a competitor.  Furthermore, not all information that is not generally known to the public acquires independent economic value from that fact.  And, conversely, not all information that has independent economic value is generally unknown to the public. *See, e.g., Ohio ex rel. Besser*, 732. N.E.2d 373 (documents relating to draft contracts, bids, and letters of negotiations are not trade secrets for lack of showing of any independent economic value); *Jacono v. Incacare Corp.*, No. 86605, 2006 Ohio App. LEXIS 1501 (Ohio Ct. App. 2006) (projected sale, cost data, pricing and manufacturing costs, terminology, data configurations and devices used in unique marketing plans are not trade secrets because they are already obsolete, or were not shown not to be used by, or available to, competitors); *Hildred Mfg. v. Semco, Inc.*, 785 N.E.2d 774 (Ohio Ct. App. 2003) (manufacturing processes readily ascertainable to the public and customer and vendor lists are already in the public domain).

Jaro discusses at some length the security measures it took to preserve the confidentiality of its proprietary information.  However, Jaro does not satisfactorily address the other factors of the trade secret analysis.  Without more, Jaro's response to Grandy's motion for summary judgment is simply a reliance upon the mere denials or allegations of Grandy's pleading -- a response running afoul of the summary judgment standard.

Furthermore, not only is Jaro unable to show that its proprietary information constitutes a trade secret, it also falls short of proving misappropriation thereof within the meaning of the statute. Jaro refers to certain emails sent between Leonard Grandy, Rick Grandy, Melissa Sager, and Deana Grandy to transfer proprietary information from Dalko Logistics to Dalko Resources.  Jaro has not submitted into the record any evidence of such emails; instead, it implies that because Grandy has wiped clean Deana's computer, Jaro cannot obtain such evidence.  To support its claim, however, Jaro cites Terry Fiorina's affidavit as confirming that some of those emails have remained on plaintiffs' computers and verify these transmissions.  Terry Fiorina, however, has admitted at his deposition that they have been unable to open the email attachments and that their assumption as to the content of the files is based solely on the subject lines of the files.  Jaro does not offer any explanation as to why the emails that have purportedly originated from the Dalko Logistics computers have been lost.

Jaro's remaining arguments regarding misappropriation similarly lack merit.  Jaro wants the court to infer evidence of the use of Dalko Logistics' proprietary information by Dalko Resources from the fact that in the first five months of the operations of the latter, between 90.8% and 98.9% of its business was with the customers of Dalko Logistics.  Not only is such an inference logically tenuous, but it also fails to establish a key element of misappropriation -- acquisition or disclosure by improper means.  Equally lacking is Jaro's argument that a Dalko Logistics handbook existed that proscribed disclosure of confidential information.  The existence of a duty to maintain secrecy does not in itself establish that the duty has been breached.

Some of the files in the "DALKO Logistics" folder recovered from Deana Grandy's computer bear subject lines that suggest their contents fit the list of the items claimed by Dalko to

-23-

constitute trade secrets: e.g., files called "FREIGHT COSTS FEB. 2002" and "DALKO Logistics cost adjustments."  The latter shows a modification date of January 31, 2004, i.e. after all members of the Grandy family had resigned from Dalko Logistics.  This may mean that the Grandys have used the file beyond their work duties at Dalko Logistics.  However, Jaro does not even mention this in its Memorandum in Opposition to Grandy's Motion for Summary Judgment, which suggests that Jaro does not think that these files contain misappropriated trade secrets.

In conclusion, Jaro fails to demonstrate the existence of a genuine issue of material fact that its proprietary information constitutes trade secrets and that those secrets have been misappropriated by Grandy.  Hence, Grandy's motion for summary judgment on Jaro's claim of misappropriation of trade secrets is granted and the claim is dismissed.

> 2.     *Tortious Interference with Business Relationships and/or Prospective*
>
> *Business Relationships*

Since there is sufficient evidence for the jury to decide in favor of either of the parties, Grandy's motion for summary judgment is improper and is denied.

Jaro's complaint alleges that Grandy has intentionally interfered with Jaro's and Dalko Logistics' business relationships and prospective business relationships, including but not limited to, the business with ABC-NACO, Meridian Rail Corp., Meridian Rail Services, Meridian Track Products, Meridian Rail Products, and other customers and/or potential customers.

The tort of interference with business relationships occurs when a person, without a privilege to do so, induces or otherwise purposely causes a third person not to enter into, or continue a business relationship with another.  *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Constr. Trades Council*, 651 N.E.2d 1283 (Ohio 1995).  The elements of tortious interference with a

business relationship or a prospective business relationship are:1) a business relationship; 2) the wrongdoer's knowledge of the relationship; 3) the wrongdoer's intentional and improper action taken to prevent a contract formation, procure a contractual breach, or terminate a business relationship; 4) a lack of privilege; and 5) resulting damages. *Castle Hill Holdings, LLC v. AL Hut, Inc.*, No. 86442, 2006 Ohio App. LEXIS 1239, at *15 (Ohio Ct. App. 2006), *citing Brookside Ambulance, Inc. v. Walker Ambulance Serv.*, 678 N.E.2d 248, 252 (Ohio Ct. App. 1996). Lack of privilege has been understood as lack of justification. *Licul v. Swagelok Co.*, No. 86322, 2006 Ohio App. LEXIS 619, at *11 (Ohio Ct. App. 2006).

Grandy argues that Jaro cannot present any evidence that Grandy intentionally interfered with any business relationship involving Jaro, or that Grandy induced anyone not to do business or to discontinue doing business with Dalko Logistics.  Grandy relies on Leonard Grandy's affidavit where he makes averments to this effect.  Jaro, in response, cites the following examples of interference by Grandy:

- Kevin Gillies, the Vice-President of a company called LILCO, states in his affidavit that sometime before May 21, 2002, Leonard Grandy had contacted LILCO as an officer of Dalko Logistics and sought to sell Dalko Logistics services to LILCO.  On or about May 21, 2002, Leonard Grandy advised LILCO that the business relationship would be with Dalko Resources instead of Dalko Logistics and obtained a confidentiality agreement for Dalko Resources with LILCO shortly thereafter.

- On February 27, 2002, Leonard Grandy executed an agreement with Meridian Rail Products for logistics services on behalf of Dalko Logistics with all notices to be addressed to: "Leonard

-25-

O. Grandy, CEO, DALKO Logistics Group, LLC."  James Berlin of Meridian Rail, in his affidavit, avers that around July 31, 2002, Leonard Grandy contacted and informed him that the Meridian Rail contract was in his personal name and not in the name of Dalko Logistics so that Leonard could "move." Grandy also told Berlin that he had a company named DALKO, which stood for the middle initials of the names of several of his family members.

• Tracy Jones, an accountant at ABC-NACO and its successors Meridian Rail and Chicago Castings, testified in her affidavit that on about October 25, 2002, she believed that there was a change in the name of the Dalko company and that she was told that Meridian Rail would get flat rates from Dalko Resources.  Jaro notes that, at the time, both Leonard and Richard Grandy, as well as Melissa Sager, were employees of Dalko Logistics.

• In the first five months of operations, 90.8% to 98.9% of Dalko Resources' business was with customers of Dalko Logistics.

To this, Grandy replies by arguing that Jaro still cannot prove intentional interference with a business relationship.  In particular, Grandy claims that because there is no evidence that LILCO had any existing business relationship with Dalko Logistics or was going to enter into such a relationship, there is no evidence that LILCO decided not to do business with Dalko Logistics because of Leonard Grandy.  Grandy also argues that Jaro's claim of intentional interference must fail in the absence of any evidence that Meridian Rail or Chicago Castings terminated an existing relationship or decided not to enter into a business relationship with Dalko Logistics because of anything that any member of the Grandy family did.  Grandy's arguments are not well-taken.

-26-

While Jaro's proposition that the percentage of client overlap between Dalko Logistics and Dalko Resources is too removed from an inference of interference to be given much weight, its other averments give rise to a genuine issue of material fact that intentional interference with business relationships might have occurred.  As the name of the tort itself, intentional interference with business relationships or *prospective* business relationships implies, there is no requirement that a business relationship be consummated in a contract.  *See Cooper v. Jones*, No. 05CA7, 2006 Ohio App. LEXIS 1606, at *11-12 (Ohio Ct. App. 2006) ("Tortious interference with business relationships includes intentional interference with prospective contractual relations not yet reduced to a contract.").  In the case of LILCO, although no agreement between Dalko Logistics and LILCO has been reached, Leonard Grandy's act of contacting LILCO to seek a contract may constitute a foundation of such a business relationship.  Moreover, in the case of Meridian Rail, there was both an established business relationship in the form of an agreement executed by Leonard Grandy on behalf of Dalko Logistics in February 27, 2002, and an undeniable knowledge thereof.  In both cases, Dalko Logistics' relations with the customers was either not entered into or was discontinued.  The other elements of the tort of intentional interference raise genuine issues of material facts that should be left to the jury to decide.

Contrary to Grandy's suggestion, the element of causation in the case of tortious interference with a business relationship may be established by circumstantial evidence.  *Wauseon Plaza, Ltd. P'ship v. Wauseon Harware Co.*, 807 N.E.2d 953, 964 (Ohio Ct. App. 2004), *see also Hilliard v. Lease*, No. 93AP-1029, 1993 Ohio App. LEXIS 6447, at *8 (Ohio Ct. App. 1993) (causation may be reasonably inferred from the pleaded facts).  Thus, despite Grandy's denial of any improper action, a reasonable jury could find that the set of circumstances surrounding the LILCO and Meridian Rail

-27-

incidents warrants a finding that Grandy intentionally and without a justification prevented the formation of a contract for Dalko Logistics or terminated an existing business relationship.  A jury may reasonably infer intentional and unjustifiable interference from the fact that Leonard Grandy sought to promote Dalko Logistics' business with LILCO prior to the formation of Dalko Resources on May 16, 2002, whereas, after his own company was formed, he represented that the business relationship would be with Dalko Resources and obtained a confidentiality agreement for it. Similarly, a jury could find that Grandy acted with an improper and unjustifiable intent, and interfered with Dalko Logistics' business based on Leonard Grandy's representations to James Berlin about the origins of the name Dalko and the Meridian Rail contract.  Other helpful evidence is that prior to the conversation with Berlin, Leonard Grandy informed Dalko Logistics that Meridian Rail was going to contract with another logistics company, and the fact that Dalko Resources ended up doing business with Meridian Rail.  Since there is sufficient evidence for the jury to decide in favor of either of the parties, summary judgment is improper and is denied.

3.      *Promissory Estoppel*

Grandy's motion for summary judgment on Jaro's claim of promissory estoppel is granted and the claim is dismissed

Jaro's complaint pleads a cause of action for promissory estoppel based on its claim that Leonard Grandy made specific promises to Jaro in exchange for his employment by the latter, as well as oral assurances that he would obtain logistical and coordination services for Jaro from certain customers.  In detrimental reliance on such promises, and as a result of Leonard Grandy's breach of these promises, Jaro claims to have suffered damages.

-28-

The doctrine of promissory estoppel is centered on the notion that "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." *Wing v. Anchor Media, Ltd.*, 570 N.E.2d 1095, 1098 (Ohio 1991).  The elements of a claim of promissory estoppel are: a) a clear and unambiguous promise was made; b) the party to whom the promise was made relied on such promises; c) the reliance was reasonable and foreseeable; and d) the reliance was to the detriment of the party claiming estoppel. *Healey v. Republic Powder Metals, Inc.*, 619 N.E.2d 1035 (Ohio Ct. App. 1992).

Grandy claims that summary judgment is appropriate because no clear and unambiguous promise has been made; Jaro did not rely on any statements made by Leonard Grandy to its detriment, and, even if there was such reliance, it was unreasonable and unforeseeable.  Specifically, Grandy claims that the promises allegedly made by Leonard Grandy are non-specific and vague assertions of potential future business development opportunities and efforts, therefore failing to establish the first element of a claim for promissory estoppel.  Jaro claims that Grandy made clear and unambiguous promises that he would 1) obtain for Dalko Logistics a logistics contract from ABC-NACO for all of their divisions and the successors of those divisions; and 2) obtain logistics contracts from a number of other companies requiring transportation services with which he was a personal friend.  The contradictory interpretations of Grandy promises, coupled with the evidence before the court, presents a genuine issue of material fact as to whether the promises are sufficiently clear and unambiguous to meet the test of promissory estoppel.  Therefore summary judgment fails based on this element of promissory estoppel.

-29-

Next, Grandy argues that any reliance on promises that are not clear and unambiguous is unreasonable and unforeseeable as a matter of law.  Because we have determined that there is a genuine issue of material fact as to whether the promises were clear and unambiguous, Grandy's argument fails.

Lastly, Grandy asserts that Jaro did not detrimentally rely on any of Leonard Grandy's statements.  Jaro claims that it has relied on Grandy's promises to its detriment, and as evidence of such detriment, cites the $70,000 start-up costs for Dalko Logistics, as well as the $80,000 salary paid to Leonard Grandy, the company cars, credit cards, and the benefit packages provided to Leonard and Richard Grandy.  In its own motion for summary judgment, however, Jaro alleges that in 2002 Dalko Logistics had an annual income of $1,477,235.12.  Absent any other evidence of detriment, and even assuming arguendo that Leonard Grandy breached his clear and unambiguous promises, it is difficult to find that Jaro's reliance on Grandy's promises turned out to be anything but a financial success.  "An essential element of any action predicated on promissory estoppel is ... detrimental reliance." *Karnes v. Doctors Hosp.*, 555 N.E.2d 280, 283 (Ohio 1990); *see also Talley v. Teamsters*, *Chauffeurs Warehousemen and Helpers*, 357 N.E.2d 44, 47 (Ohio 1976) (detrimental reliance upon the promise must be of a sufficiently definite and substantial nature so that injustice will result if the promise is not enforced).  On the facts of the case, Jaro's reliance on Grandy's promises did not result in any detriment of a definite and substantial nature.  Therefore, Grandy's motion for summary judgment on Jaro's claim of promissory estoppel is granted and the claim is dismissed.

> 4.    *Copyright registration and Cancellation of Copyright*

-30-

Grandy has not shown the absence of a genuine issue of material fact with respect to the ownership of the tri-fold brochure.  Grandy's motion for summary judgment on Jaro's claim of copyright infringement and its counterclaim for cancellation of copyright are denied

Jaro claims Grandy is violating its copyright rights under § 501 of the Copyright Revision Act of 1976, as amended (17 U.S.C. § 501).  Jaro is a holder of a copyright registration for an advertising tri-fold brochure ("Dalko Logistics Brochure").  It alleges that Grandy has created and distributed, as well as posted on its website, a Dalko Resources brochure ("Dalko Resources Brochure"), which is substantially similar to the Dalko Logistics Brochure and that thus constitutes an infringement of Jaro's copyright by the way of reproducing the copyrighted work, preparing one or more derivative works based upon the copyrighted work, and distributing copies of the copyrighted work and the derivative work.  Jaro claims that as the sole owner of the Dalko Logistics Brochure, it has at no time authorized Grandy to reproduce, prepare derivative works based upon, distribute copies of, perform, or display the Dalko Logistics Brochure.

Grandy, in its motion for summary judgment, claims that Deana Grandy is the sole author of the Dalko Logistics Brochure, having created it in or around August of 2002, and, as such, is the sole owner of the work.  Furthermore, Grandy alleges she has neither transferred any of her rights, including her copyright in the brochure, to Jaro, nor has she ever been an employee of Jaro or Dalko Logistics or received any compensation from them for creating the brochure.  Because it believes Deana Grandy is thus the incontestable owner of the brochure, Grandy prays the court to grant it summary judgment on Jaro's claim of copyright infringement, as well as on its counterclaim for copyright cancellation.

Jaro submits that a copyright registration certificate constitutes prima facie evidence of the validity of the copyright and of the facts stated therein, and further argues that under 17 U.S.C. § 201(b), in the case of a work made for hire, the author of a work for hire is the employer or other person for whom the work was prepared.  Building on this claim and citing Terry Fiorina's affidavit, Jaro contends that Leonard Grandy provided the brochure to it when he was an employee of Jaro and CEO of Dalko Logistics.  In response to Grandy's claim that Leonard Grandy has never been an employee of Jaro or Dalko Logistics, Jaro makes a conclusory assertion that Leonard Grandy was in fact an employee of Jaro and an officer of Dalko Logistics.  Further, Jaro maintains that as an employer, it had the right to define Leonard Grandy's work; that he possessed the skill and experience to create the brochure; and that the preparation of the brochure was part of the regular business of Jaro and Dalko Logistics.  It is also alleged that Deana Grandy's work experience would not allow her to create such a marketing tool.  In any event, Jaro argues, Leonard Grandy has stated in his affidavit that every contract written for Dalko Logistics was written by him and typed by Deana; therefore, the argument goes, when Deana Grandy testified that "we" wrote the Dalko Logistics Brochure, it meant that Leonard had written it and that Deana Grandy had typed it up.  Jaro concludes that Deana Grandy has acted a secretary to Leonard Grandy in his work for Jaro.

To establish a prima facie case of copyright infringement, a claimant must show 1) ownership of a valid copyright, and 2) copying of constituent elements of the work that are original.  *Hi-Tech Video Prods., Inc. v. Capital Cities/ABC, Inc.*, 58 F.3d 1093, 1095 (6th Cir. 1995).  A copyright registration certificate made before or within the five years after the first publication of the work constitutes prima facie evidence of the validity of the copyright and of the facts stated in the certificate.  17 U.S.C. § 410 (2006).  Jaro's certificate of registration is dated February 20, 2004, and

the Dalko Logistics brochure was first printed for distribution in the beginning of 2002.  Therefore,

the certificate is prima facie valid.  The two brochures contain almost identical passages and indeed,

Grandy does not challenge the substantial similarity of the two documents.  Grandy, however,

attacks the validity of the certificate by arguing that it has been obtained through fraud since the true

author of the brochure is Deana Grandy, who had not performed that work for hire within the

meaning of Section 201(b) of the Copyright Act.

The Copyright Act provides that ownership "vests initially in the author or authors of the

work." 17 U.S.C. § 201(a).  Generally, the author is the party who actually creates the work.  *Cmty.*

*for Non-Violence*, 490 U.S. at 737.  The Act, however, carves out an important exception for "works

made for hire."  If the work is for hire, "the employer or other person for whom the work was

prepared is considered the author," and, therefore, the owner of the copyrighted work. § 201(a).  A

work is performed for hire if it is:

> 1) a work prepared by an employee within the scope of his or her
> employment; or
> 2) a work ordered or commissioned for use as a contribution to a
> collective work, as a part of a motion picture or other audiovisual
> work, as a translation, as a supplementary work, as a compilation, as
> an instructional text, as a test, as answer material for a test, or as an
> atlas, if the parties expressly agree in a written instrument signed by
> them that the work shall be considered a work made for hire.

§ 101. It is clear and uncontested, that the brochure does not fall within any of the categories of

ordered or commissioned work mentioned in paragraph 2.  Therefore, to vest ownership in Jaro, the

brochure must be a work prepared by an employee within the scope of the employment.  In *Cmty.*

*for Non-Violence*, the Supreme Court held that the principles of the common law of agency should

be applied in determining whether the work was prepared by an employee. The Court listed the

following set of factors to guide that determination: the hiring party's right to control the manner and

-33-

means by which the product is accomplished; the skill required for the completion of the work; the

source of the instrumentalities and tools; the location of the work; the duration of the relationship

between the parties; whether the hiring party has the right to assign additional projects to the hired

party; the extent of the hired party's discretion over when and how long to work; the method of

payment; the hired party's role in hiring and paying assistance; whether the work is part of the

regular business of the hiring party; whether the hiring party is in business; the provision of

employee benefits; and the tax treatment of the hired party.  490 U.S. at 751-52.  The evidence

advanced by the parties with respect to many of the aforesaid factors is contradictory.  Jaro asserts

that Leonard Grandy was a regular employee of Jaro and Dalko Logistics since November 9, 2001,

through November 1, 2002, and was paid an annual salary and benefits; that creation of the brochure

was part of the regular business of Jaro and Dalko Logistics, and that Jaro and Dalko had the right to

establish the scope of Leonard Grandy's work duties.  Additionally, Jaro claims that Deana Grandy

received healthcare benefits from Jaro and Dalko Logistics and was essentially his agent by serving

as his home secretary for projects related to Dalko Logistics.  On the other hand, Leonard and Deana

Grandy, in their affidavits, claim that virtually all of the work performed for Dalko Logistics was

performed from the Grandys' home; that Deana was the one who typed all the documents that have

been produced by Dalko Logistics and that she was the sole author of the brochure.  Where evidence

is contradictory and thus subject to a credibility determination, a genuine issue of material fact exists

as to the truth of the alleged facts.  Construing the evidence in a light most favorable to Jaro and

bearing in mind the presumed validity of the copyright registration, the court can arrive at but one

conclusion: Grandy has not shown the absence of a genuine issue of material fact with respect to the

-34-

ownership of the brochure. Its motion for summary judgment on Jaro's claim of copyright infringement and its counterclaim for cancellation of copyright are denied.

### 5. Spoliation of Evidence

Grandy submits that Jaro cannot establish the necessary elements of the claim of spoliation of evidence. Since we have already determined that a genuine issue of material fact exists in the discussion of Jaro's motion for summary judgment on the same claim, Grandy's motion is denied.

### 6. Constructive Trust and Accounting

Grandy's motion for summary judgment on the claims of constructive trust and accounting is denied.

Jaro's complaint alleges causes of action for constructive trust and accounting. Specifically, Jaro alleges that to the extent that Grandy has received revenue or other benefits as the result of its wrongful conduct against Jaro, all such funds belong to Jaro. Therefore, the complaint states, Grandy is a trustee of such funds for the benefit of Jaro and should pay them back to Jaro upon order.

The accounting claim alleges that because Grandy holds recorded information relating to Jaro's property and financial affairs, it should turn over and disclose such information to Jaro, as well as provide a full accounting of its transactions with Jaro, Jaro's and Grandy's prospective and actual customers, and all other parties with whom it has communicated regarding Jaro's business.

Grandy's motion for summary judgment argues that because constructive trust and accounting and derivative claims of relief depend upon Jaro's prevailing on one or more of its claims, they should be dismissed. Presumably, this reasoning implies that all of Jaro's claims fail as a matter of law. Far from being so, not only have Jaro's claims for tortious interference with

-35-

business relationship, copyright infringement, and spoliation of evidence survived summary judgment, but also Grandy's motion did not request summary judgment on *all* counts of Jaro's complaint. Grandy's motion for summary judgment on the claims of constructive trust and accounting is denied.

7.      *Summary Judgment on All of the Claims against Deana Grandy and Melissa Sager*

Grandy's motion for partial summary judgment dismissing all claims against Deana Grandy and Melissa Sager is denied. Jaro's complaint names Deana Grandy and Melissa Sager as co-defendants in the action without specifying the causes of action that particularly relate to them. For the purposes of this discussion, we will assume, therefore, that each claim contains allegations of wrongdoing by Deana Grandy and Melissa Sager. Grandy contends that because there is no basis for imposing personal liability against either of these two defendants, summary judgment on all claims against them should be granted to Grandy.

Jaro lists members of the Grandy family, as well as Dalko Resources, as defendants. All of the individual defendants are officers of Dalko Resources. In each relevant count, therefore, Deana Grandy and Melissa Sager, as officers of Dalko Resources, are appropriately referenced as potentially liable defendants. Moreover, the actions of Deana Grandy and Melissa Sager are relevant and cited by both sides with great frequency. Specifically, at issue is Deana's disputed role in the authorship of the brochure, the spoliation of evidence, as well as her alleged role as Leonard Grandy's secretary while Leonard was working with Dalko Logistics. Melissa, in addition to be being an officer of Dalko Resources, was an employee of Dalko Logistics. Jaro specifically alleges that Melissa steered customers away from Dalko Logistis and toward Dalko Resources during her

-36-

employment with Dalko Logistics.  (Second Amended Complaint ¶ 40).  Therefore, both Deana Grandy and Melissa Sager are appropriately named defendants and the motion for partial summary judgment with respect to all claims against them is denied.

## III.    Conclusion

For the foregoing reasons, the court grants Jaro's motion for summary judgment on the claim of violation of the Lanham Act and denies the motion on the spoliation of evidence claim. The court also grants summary judgment to Grandy on Jaro's claim of misappropriation of trade secrets and promissory estoppel, and denies summary judgment on the claims of tortious interference with business relationship, constructive trust, accounting, copyright infringement, and cancellation of copyright.  The court sets a status conference for September 15, 2006 at 9:30 in Chambers 17B, U.S. Courthouse, 801 W. Superior Avenue, Cleveland, Ohio.

IT IS SO ORDERED.


s/Ann Aldrich_____
ANN ALDRICH
UNITED STATES DISTRICT JUDGE
**Dated: September 5, 2006**

-37-